NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LLOYD A. FRY ROOFING CO., Inc., Respondent.

No. 29081.

United States Court of Appeals, Fifth Circuit.

Dec. 14, 1970.

Marcel Mallet-Prevost, Asst. Gen. Counsel, Washington, D. C., Harold A. Boire, Director, Region 12, Tampa, Fla., Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, John I. Taylor, National Labor Relations Board, Michael S. Winer, Attys., Washington, D. C., for N.L.R.B.

Robert C. Lanquist, O. R. T. Bowden, Charles F. Henley, Jr., Hamilton & Bowden, Jacksonville, Fla., Paul B. McInerney, Summit, Illinois, for respondent Lloyd A. Fry Roofing Co., Inc.

Paul B. McInerney, Summit, Illinois.

Before TUTTLE, DYER and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

The National Labor Relations Board (Board) petition for enforcement of a Board finding that the Lloyd A. Fry Roofing Company (Roofing) was a successor employer and therefore had a duty to bargain with the Union [1] which represented the employees of Roofing's predecessor employer, National Felt and Paper Company (National). The Board concluded that Roofing violated Section 8(a) (5) and (1) of the Act by refusing to bargain and by unilaterally adjusting wages, hours, and employee insurance benefits.

These facts are not in dispute. On October 23, 1967, Union filed a petition to represent the production and maintenance workers of National at its Miami, Florida, plant. National was engaged in two separate operations—a tissue paper operation and felt paper operation. Roofing was National's sole customer. At the time of the election, December 27, 1967, approximately ten of the twenty-five employees were involved in the felt paper operation, while the remaining fifteen were employed in the tissue paper operation. The Union won the election by a vote of 19 to 6, and received Board certification on January 5, 1968. A day or so before the certification National discontinued the tissue paper operation and terminated all tissue paper employees. On March 18, 1968, Roofing purchased the remaining felt paper operation, including plant, inventory and equipment, from National, the sale being completed April 10, 1968. Roofing bought none of National's assets which pertained to the tissue operation. The transaction was a cash sale, not a corporate merger. No National officers were retained in Roofing's employ. Roofing did not acquire the receivables or assume the debts or liabilities of National.

Roofing closed the felt paper operation for about three weeks after completion of the sale April 10 in order to make repairs and renovations. For the week ending April 14, 1968, Roofing employed two persons who had previously been National production employees but who during this period were engaged as plant watchmen. In the week ending April 21, 1968, Roofing hired five more former National employees, including two supervisors. A sixth employee, who had not previously worked for National, was hired but worked for three days only. The employee complement remained constant until the week ending May 19, 1968, when six more employees

---

1. Retail, Wholesale and Department Store Union, Local 885, AFL-CIO (Union hereinafter).

were hired, none of whom were previous employees of National. By May 26, 1968, the total employee complement was 26, six of whom were former National employees.

In the meantime, however, on May 2, 1968, the Union requested that Roofing recognize and bargain, stating that it considered Roofing to be National's successor. Roofing refused to bargain, and thereafter instituted unilateral changes in employee working conditions, including insurance benefits.

Before the hearing examiner Roofing argued that it was not a successor employer under the facts. Additionally Roofing argued that to require it to recognize and negotiate with the Union would amount to "splitting" the previous single tissue paper and felt paper unit into two parts as there was nothing to prevent National or someone else from reactivating the tissue operation. Roofing contended that if the tissue operation should be reactivated, the question would arise as to whether the Union achieved representation rights for employees of two different employers on the basis of one election and one certificate. The trial examiner concluded that his findings could not be based on a contingency which at the time of his findings had not materialized; the examiner did note however that proper procedures existed for the reopening of the matter should the tissue paper operation later be reactivated by National.

Subsequent to the trial examiner's findings the tissue paper operation was reactivated by National. Roofing sought without success to reopen the proceedings before the trial examiner. The Board, as indicated above, found that Roofing violated Section 8(a) (5) and (1) of the Act by its refusal, after May 3, 1968, to bargain collectively with the Union as the exclusive representative of its employees in an appropriate unit, and by subsequently effecting unilateral changes in the employees' working conditions. Roofing's position here is that the case should be remanded to the Board for further proceedings in light of the reactivation by National of the tissue paper operation. However, contrary to the advice given Roofing by the trial examiner, the Board now contests the propriety of remanding the case for further proceedings. The Board urges that the reactivation of the tissue paper operation is irrelevant because it took place after the alleged violation of the duty to bargain.

We believe that Roofing is correct in asserting that review in this Court is premature until the question of the "splitting" of the unit and the effects thereof, on Union representation, if any, have been considered by the Board. These additional considerations *may* very well have a bearing on the Board's findings and conclusions relative to the alleged NLRA violations by Roofing. In remanding this cause we do not express any opinion on the decision which the Board should reach after considering the additional matters presented. Our remand for further proceedings renders it unnecessary for us at this time to pass upon the question of whether the Board's findings to date are supported by substantial evidence.

Remanded for further proceedings not inconsistent with this opinion.